In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 14-2888

M. MICHAEL REILLY,

*Plaintiff-Appellee,*

*v.*

CONTINENTAL CASUALTY CO.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 2885 — **Sara L. Ellis**, *Judge*.

_____

ARGUED APRIL 21, 2015 — DECIDED MAY 6, 2015

_____

Before EASTERBROOK and RIPPLE, *Circuit Judges*, and
REAGAN, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. Michael Reilly participated in
a pension plan offered by Continental Casualty Co., which
the parties call CNA but which we call Continental to avoid
the initialism. Continental administers its own defined-

_____

[*] Of the Southern District of Illinois, sitting by designation.

benefit plan, which provides that the pension depends on the highest average compensation in any 60-month period of employment. "Compensation" is a defined term: regular salary, incentive compensation, and deferred compensation deposited in §401(k) plans are in (as are some other items), while educational bonuses, referral bonuses, overseas allowances, and some other items are out. The district court's opinion, 2014 U.S. Dist. LEXIS 102788 (N.D. Ill. July 29, 2014), has the complete list of inclusions and exclusions, which we need not repeat.

When Reilly left Continental's employ in 1999, he received a statement of his qualifying compensation that implied a monthly benefit of about $5,400 starting in 2012, when he would turn 65 and become eligible. Come 2012, however, Continental sent Reilly a different calculation, showing lower compensation and entitlement to roughly $4,200 a month. When internal appeals did not avail him, Reilly filed this suit under §502(a)(1)(B) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1132(a)(1)(B). The district judge concluded that Continental's decision was arbitrary and capricious (which the parties agree is the governing standard), and the court ordered it to pay monthly benefits at the $5,400 level. Continental contends in this court that its calculation should have been sustained, and if not that the district court should have remanded for a new calculation rather than ordering payment at the rate projected in 1999.

The district court found Continental's 2012 decision to be arbitrary and capricious because it is not based on the Plan's definition of "compensation"—at least is not *demonstrably* based on that definition. Instead of using the amount of

compensation that had been calculated in 1999, Continental in 2012 used a different number. For example, in 1999 Reilly was told that his 1994 qualifying compensation had been $315,042; but in 2012 Continental told Reilly that his 1994 qualifying compensation had been only $164,747.16. (Adjustments were made for other years too; we need not discuss them.)

Why the difference? Continental asserted that the 1999 statement reflected Reilly's qualifying compensation plus a "benefit salary." Problem: "benefit salary" is not a term used or defined in the Plan. It is apparently a term employed at Continental to determine health and disability coverage, but as far as the district judge could see (and as far as we can determine) it has nothing to do with anyone's pension. So what Continental said in 2012 boiled down to "the 1999 calculation was based on something other than qualifying compensation"—which sets the stage for a proper calculation but is not itself one.

Continental did not tell Reilly, or the district court, or us, why $164,747.16 is the *right* number for 1994. It said that it had added up the eligible items but did not demonstrate this, nor did it show how it had ascertained Reilly's top-60-months' compensation. No matter how many times Continental rattles off the phrase "benefit salary"—which it has done an awful lot—this is not an *explanation* of the 2012 decision because it leaves everyone in the dark about how Reilly's qualifying compensation was calculated. An explanation-free decision is arbitrary and capricious.

What Continental needed to do was apply the Plan's definition. For each month in 1994, how much did Reilly earn in regular salary? How much in incentive compensation? How

much was deposited in his name in a §401(k) plan? Having computed qualifying "compensation" for each month of Reilly's employment, Continental then could find the highest 60-month period and use the Plan's formula to come up with a monthly benefit. Maybe Continental did exactly that—but if so the exercise is not in the record and has never been subject to review or dispute by Reilly.

To show that $164,747.16 is an unexplained number does not justify a judicial award of a $5,400 monthly pension, however. The court needed to determine (or allow the administrator to determine) the *right* number, not just to assume that whatever had been estimated in 1999 is Reilly's entitlement. Like the 2012 calculation, it reflects only Continental's say-so rather than a demonstration that the Plan's terms lead to a particular outcome.

Reilly, as the plaintiff, has the burdens of production and persuasion. So we would have expected him to offer a calculation in support of the pension to which he claims entitlement. He did not. Instead he stood on the Plan's 1999 estimate. Yet that has no more support than the 2012 calculation. One or the other may be mistaken; indeed, both may be mistaken. The only way to reach a reliable decision is to apply the Plan's terms to Reilly's qualifying compensation, one month at a time, to find the top-60-month average. Continental should have all the necessary records. If Reilly did not keep his own set of monthly records, he is entitled to receive the data from Continental—and to contest Continental's compensation figures, if he thinks them mistaken.

The district court's decision cannot stand, because Reilly has not tried to show that $5,400 is the only possible outcome of a proper calculation process. All that has been estab-

lished to date is that Continental's 2012 decision is unreliable. By working through the original compensation numbers, the parties may be able to agree what the right pension is under the Plan's terms. If agreement is elusive, the district court must remand this matter to Continental so that the administrator can make a fresh calculation, which then could be subjected to another round of judicial review.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.